## MANUEL PLASENTILLA V. STATE.

No. 24140. December 8, 1948.
Rehearing Denied January 12, 1949.

Hon. Alan R. Fraser, Judge Presiding.

*Mae M. Ament* and *J. C. Epperson,* both of Alpine, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

Murder with malice is the offense; the punishment, fifty years in the penitentiary.

This is an unexplained killing.

The appellant, the deceased, the brother of deceased, and one Nunez were together at night on the streets. Appellant was heard to exclaim that he "wanted to kill someone," at the time exhibiting a 32 automatic pistol. The remark of wanting to kill someone does not appear to have been directed against anyone in particular. However, deceased said to the others present, "No, he is my friend. Nothing will happen." His brother and Nunez walked away, leaving deceased and appellant together. After walking a short distance, they heard shots. They returned to where they had left the parties and there found deceased mortally wounded, with a bullet wound in the left thigh and another in the chest. Appellant fled, and was arrested a few days later with a 32 automatic pistol in his possession. Deceased died some ten days thereafter.

One witness expressed the opinion that the bullet taken from the body of deceased was of 32 caliber. There was found at the scene of the shooting six empty exploded automatic pistol shells.

The appellant did not testify, nor did he offer any affirmative defense.

Appellant insists that the facts are insufficient to support the conviction. With this contention we cannot agree, and it is therefore overruled.

The pivotal question presented relates to the alleged misconduct of the jury, it being insisted that the jury during their deliberation received other testimony, in that there was a discussion by and among the jurors relative to and concerning the pardon policy of this State of such a nature as that under the provisions of Sec. 7 of Art. 753, C. C. P., a new trial should have been awarded. In support of this contention, nine of the twelve jurors trying the case testified upon the hearing of the motion for new trial.

We quote from the testimony of the foreman of the jury, as follows:

"On the first ballot taken by the jury on punishment after we had voted that the defendant was guilty of murder with malice the jury stood 9 for 50 years; 1 for 7 years; one for 10 years and 1 for 25 years; only three ballots were taken on the punishment and some time before the third and last ballot was taken which showed all twelve for 50 years some one brought up the question of how long a man would serve and between the second and third ballots on punishment there was a short discussion

about the fact that if the defendant got 25 years he would serve only 4 or 5 years before being pardoned and if he got 50 years he would probably serve 15 or 20 years before being pardoned, but I don't remember who mentioned it. It was after this discussion that we took the third and final ballot on which the jury was unanimous for 50 years. I couldn't see anything wrong with it, as far as that goes. When that third ballot was taken there were already ten for 50 years and the discussion might have caused the other two to go up to fifty, I don't know if they figured on that or not, but it was unanimous on the next ballot after the discussion." ·

The testimony of the other jurors was not more favorable to appellant's contention than that of the foreman. One of the jurors did not hear the discussion at all, while all the others said that the discussion was to the effect that if a convict behaved himself his term would be shortened.

No express injury to appellant was shown as a result of the discussion; none of the jurors admitted having agreed to the verdict as a result thereof.

We are particularly impressed with the testimony of one of the jurors, who said, "We discussed it a little, about how many years he would get off if he behaved himself." He was then asked: "Q. And it was discussed that if a man behaved himself he would be pardoned?"—to which he replied, "A. That is all, everybody knows that."

Looking to the testimony of the nine jurors as a whole, it appears that the trial court was authorized to conclude that what occurred in the jury room was a discussion to the effect that if appellant behaved himself while in the penitentiary he would not be required to serve the full sentence imposed.

It was the province of the trial court, in the exercise of his discretion, to pass upon the testimony of the jurors. Our review is to determine if the trial court abused that discretion.

It appears that the holding in the cases of King v. State, 141 Tex. Cr. R. 257, 148 S. W. (2d) 199, and Walker v. State, 201 S. W. (2d) 823, support the trial court's ruling.

In the Walker case, in passing upon facts similar to those presented here, we said:

"It is a matter of common knowledge that prisoners are credited with extra time for good behavior, and the statement of Mr. Bridwell was in the nature of an argument which might arise in most any case where the jury was attempting to reach an agreement as to the punishment where the jurors entertained different ideas. The trial judge, after hearing the evidence of Mr. Culpepper, declined to grant a new trial. He was justified in concluding that if the foreman expressed the opinion that if appellant behaved himself he would probably get out in fourteen or sixteen months, on a two years sentence, it was not misconduct demanding a new trial . . ."—citing the King case, supra.

In the instant case the appellant relies, among others, upon the cases of Pena v. State, 129 S. W. (2d) 667, and Price v. State, 199 S. W. (2d) 168. Those cases were distinguished in the Walker case. No necessity exists to here, again, point out the distinctions there drawn.

We are unable to reach the conclusion that the jury was guilty of misconduct requiring a reversal of the judgment in the instant case.

The trial court charged upon circumstantial evidence and gave the charge which has long been approved by this court. We remain convinced that such charge fully presents the law of circumstantial evidence.

The remaining bill of exception has been examined and is overruled without discussion.

No reversible error appearing, the judgment is affirmed.

Opinion approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant again insists that he is entitled to a reversal herein because of his alleged misconduct of the jury in that they heard other and further testimony in their retirement to the effect that if a person is sent to the penitentiary and behaves himself, he is usually given some time off from his sentence because of his good behavior.

It does not appear that any person in the jury room offered testimony to such effect, but that some of the jurors may have

discussed among themselves such a proposition. A juror after all is but a human being with the accumulation of knowledge that usually comes to one through the years of living and undergoing experiences. He cannot be made an automaton and divested of matters that have come under his observation and are of common knowledge to most fairly well-informed persons. True it is that certain experiences peculiar to him and of which he has personal knowledge, if instances thereof be cited to his fellow members, such recitation would doubtless become other and new evidence before the jury, but as to matters of common knowledge, same cannot be taken from him and he be deprived of the knowledge and utilization of that which practically all persons know. The testimony of the juror quoted in the original opinion seems to be an answer to appellant's contention herein when the juror said: "Q. And it was discussed that if a man behaved himself he would be pardoned," to which he replied, "A. That is all, everybody knows that."

We think the original opinion correctly disposed of all matters shown in the record, and this motion is therefore overruled.